

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADINE N. KEYS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PATRICK R. DONAHOE, Postmaster )<br>General, United States Postal Service, )<br>)<br>Defendant. ) | No. 14 C 1297<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Bernadine Keys filed a complaint of employment discrimination against her former employer, the United States Postal Service (represented by the Postmaster General) on February 21, 2014 (doc. # 1). At the same time, she submitted an application requesting to proceed *in forma pauperis* ("IFP petition"), stating that she did not have sufficient funds to pay the $400.00 filing fee normally required to initiate a civil lawsuit (doc. # 4). Before the parties consented to proceed in this court, the district court judge granted Ms. Keys' IFP petition and also granted her request for appointment of counsel (docs. ## 5, 6).

Defendant now moves to dismiss the complaint pursuant to 28 U.S.C. § 1915, arguing that Ms. Keys submitted false allegations of poverty in her IFP petition by omitting mention of various and significant assets she owns (doc. # 45). Perhaps in anticipation of the defendant's motion, Ms. Keys submitted an amended IFP application (doc. # 41) and later filed a written response to defendant's motion (doc. # 48). Defendant filed a reply and so the motion is now

---

[1]On June 17, 2014, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 16).

fully briefed (doc. # 50). For the reasons set forth below, we grant the defendant's motion to dismiss, but will give Ms. Keys leave to reinstate the case if she pays the filing fee, the cost of service by a federal marshal and a fine by January 12, 2015.

I.

Ms. Keys filed her original application for IFP on February 21, 2014 (doc. # 4). The IFP petition is supposed to be signed under penalty of perjury, but Ms. Keys' petition was unsigned.[2] In her original IFP petition, Ms. Keys stated that in the 12 months prior to submitting her application, she had received a total of $3,978.00 from an annuity, that she did not have more than $200.00 in cash or in a checking or savings account, and that she did not own any vehicle worth more than $1,000.00. As we explain below, each of these statements was false.

Around September 2014, defendant made plaintiff's appointed counsel aware of the fact that Ms. Keys had filed for bankruptcy protection on April 30, 2013, and that her bankruptcy petition listed significantly more assets than did her IFP petition filed only ten months later (Def. Mot. to Dismiss, Ex. A). Faced with the inconsistencies between her bankruptcy petition and IFP application, Ms. Keys filed an amended IFP application on November 7, 2014, which disclosed she had a checking account worth $23,000.00, a 2004 GMC Yukon worth approximately $3,000.00 and that her annuity was actually worth $3,914.38 per month (net), or $46,972.56 per year (doc. # 41). In her response to defendant's motion to dismiss and an attached affidavit, Ms. Keys said that her sister had actually completed the original IFP application on her behalf. Ms. Keys said she "felt rushed" when filing the original IFP petition, so she did not review it as carefully as she should have to see that her sister had omitted her checking account and failed to annualize her annuity (doc. # 48: Pl.'s Opp. to Mot. to Dismiss, Keys Affidavit at ¶¶

---

[2]Ms. Keys neglected to sign her IFP petition, although she did sign both the civil cover sheet (doc. #2) and *pro se* appearance (doc. # 3) she filed the same day; neither of these other documents requires a signature confirming the accuracy of the facts therein under penalty of perjury.

2

3, 7). Ms. Keys also contended that she assumed her 2004 Yukon had depreciated to less than $1,000.00 (even though in her bankruptcy petition ten months earlier, she listed its value at $5,575.00) (*Id.* at ¶¶ 9-10).

In arguing for dismissal, defendant points out additional inconsistencies between both of Ms. Keys' IFP petitions and her bankruptcy petition, which it says casts doubt on her contention that the mistakes in her first IFP petition were merely the result of careless errors. Specifically, defendant notes that in her bankruptcy petition, Ms. Keys reported her 2012 income as more than $190,000.00 and also that she failed to list the current lawsuit, or its prior administrative proceeding, as a potential asset.[3] In her response and affidavit, Ms. Keys explains that she received a one-time back pay award of $110,000.00 on July 25, 2012, of which she actually netted $64,252.69 (Pl.'s Opp., Keys Affidavit at ¶ 15). Ms. Keys contends that nine days later (so, in early August 2012), she used part of her back pay award to make a $46,000.00 gift to her church to help it pay off a loan (*Id.,* at ¶ 16). Ms. Keys produced no documentation of such a donation and defendant points out that she failed to list this charitable gift on her bankruptcy petition, dated April 30, 2013. Instead, Ms. Keys reported that she made no charitable gifts in the 12 months prior to filing for bankruptcy. Other than describing the donation to her church, Ms. Keys' response to the motion to dismiss does not account for the wages she received in 2012: either the $18,000.00 or so remaining from her back pay award or the additional $80,000.00 in ordinary wages she was paid that year.

---

[3] Ms. Keys contends that she gave all information about the various charges she has pending against her former employer to her bankruptcy attorney, and trusted him to include them in her bankruptcy petition. While the current lawsuit was not filed until after she filed for bankruptcy, an administrative complaint was pending at the time and was not listed in her petition. Ms. Keys says she has asked her bankruptcy attorney to amend her petition to reflect the current lawsuit (Pl.'s Opp., Keys Affidavit at ¶¶ 12-14).

3

## II.

At issue in this matter is whether making false statements in an IFP petition is automatically and always grounds for dismissal, and whether such dismissal must be with prejudice. Pursuant to 28 U.S.C. § 1915(e), "the court *shall* dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue," (emphasis added). A number of Seventh Circuit cases take this statement as an absolute, requiring dismissal whenever a plaintiff submits a false application for IFP status. *See, e.g., Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (upholding dismissal with prejudice and stating that "the judge had no choice" but to dismiss the case because of false allegations of poverty in the IFP application; it was not an abuse of discretion to make the dismissal with prejudice as a sanction for the blatant falsities in the IFP application).

At other times, however, the Seventh Circuit and various district courts have looked at whether the plaintiff has "reaped the benefits of *in forma pauperis* status" when determining whether to dismiss a case for falsifying an IFP application. *Hrobowski v. Commonwealth Edison Co.*, 203 F.3d 445, 448 (7th Cir. 2000). In that case, the court granted the plaintiff's first application for IFP status, which omitted information about certain assets he held, but denied a second (also inaccurate) application he filed after his attorney withdrew. However, through inadvertence, the case proceeded to trial without the plaintiff ever paying the filing fee. When evidence about the false information in the IFP petitions was adduced at trial, defendant moved for dismissal of the case pursuant to Section 1915(e)(2). The appeals court overturned the district court's granting of the motion on the ground that at the time of the trial, the plaintiff was not actually proceeding *in forma pauperis* because his second petition had been denied.

Plaintiff relies on *Davis v. Geren*, 06 C 1469, 2009 WL 362877 (S.D. Ind., February 11, 2009), to argue that her "accidental" and "understandable" errors do not warrant dismissal. In *Davis*, the plaintiff testified convincingly to the court that she was under considerable stress when she filed her IFP petition, and that stress accounted for the errors on her form; in refusing to dismiss her case, the Court noted that despite failing to report several specific sources of income, Ms. Davis did answer "yes" to the catchall question of whether she had income from other sources. *Id*, at *3.

After reviewing all of the pleadings, exhibits and affidavits, we find that Ms. Keys' situation falls somewhere between those in the cases cited by the parties. Like in *Hrabowski*, she amended her application for IFP status and like in *Davis*, she contends that mistakes in her original petition were innocent and the result of stress. At the same time, we do not find Ms. Keys' explanation for the various omissions and false statements in her applications to be entirely credible, particularly given the continued inaccuracies in her bankruptcy petition and the lack of documentation supporting her claims. We find it suspicious that every omission or false statement that Ms. Keys blames on others resulted in understating her income and assets, and thus in advancing her request for IFP status. Moreover, we are troubled by the absence of evidence from Ms. Keys (beyond her own say so) to back up certain assertions. For example, Ms. Keys could have presented a declaration from her sister attesting to her role in preparing the original IFP petition. Likewise, if Ms. Keys made such a substantial charitable donation to her church, we expect that she could have presented documentation demonstrating that she did so. Ms. Keys presented no such evidence.

Ms. Keys' conduct surely warrants dismissal of her case. IFP status is reserved for those persons who are so impecunious that they cannot afford to pay the $400.00 filing fee and the cost

of serving the complaint that all persons who seek to use the federal courts ordinarily must pay. Receiving accurate information on the IFP petition is essential to ensure that IFP status is given only to those who truly need it. The amended petition shows that Ms. Keys made material misrepresentations and omissions on her original IFP petition, which resulted in her receiving IFP status to which she was not entitled. The amended petition also shows that Ms. Keys has nearly $47,000.00 in annual income, which places her well above the poverty level (even if treating the $200.00 to $300.00 a month she now says she gives her grandson entitles her to claim him as a dependent for purposes of calculating whether she falls below the poverty level).[4] And, Ms. Keys has an additional $23,000.00 in a checking account. So, setting aside the unanswered questions about certain other information about Ms. Keys' assets (at least from 2013) revealed by the bankruptcy petition, Ms. Keys made misrepresentations on the original IFP petition that make the sanction of dismissal appropriate.

But, the closer question is whether that dismissal should be with prejudice. A dismissal with prejudice is strong medicine, which would deprive plaintiff of the ability to obtain a determination of whether she in fact was subjected to unlawful discrimination. We will not impose that ultimate sanction at this time, because we conclude that less extreme measures are available to redress the situation. We therefore will dismiss the case without prejudice, and with leave for Ms. Keys to seek reinstatement by January 12, 2015. However, in order to obtain reinstatement, by that date Ms. Keys must file a motion seeking to reinstate the case along with proof that she has paid into the Clerk of the Court the sum of $1,000.00. That amount consists of three components. *First*, Ms. Keys must pay the filing fee of $400.00 that she thus far has been able to avoid. *Second*, Ms. Keys must pay the $65.00 fee of the U.S. Marshal's Service for

---

[4]The 2014 federal poverty guideline for a single-person household is $11,670.00. The threshold for a two-person household is $15,730.00. http://aspe.hhs.gov/poverty/14poverty.cfm (visited on December 19, 2014).

6

serving the complaint (doc. # 12). *Third*, Ms. Keys must pay an additional $535.00 as a fine. We view that fine as necessary to ensure that not only is Ms. Keys deprived of any benefit for her conduct, but also to serve as a sanction that will penalize her and hopefully deter others from engaging in similar actions.

As part of our opinion today, we also grant the motion by Ms. Keys' recruited counsel to withdraw from the representation (doc. # 42). In addition, Ms. Keys should be aware that if she chooses to pay the sanction and proceed with her case, we will not recruit new counsel to assist her. A plaintiff in a civil case does not have the right to have a court recruit an attorney to represent her. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Moreover, in her original motion for attorney representation (doc. # 5) that led to the recruitment of her current counsel, Ms. Keys stated that she did "not have the fees to retain an attorney" – and, the only documentation she provided to back up that assertion was an IFP petition that misstated her income and assets. In these circumstances, we do not consider it appropriate to recruit replacement counsel for Ms. Keys. If she chooses to pay the sanction and proceed with the case, Ms. Keys either will have to find counsel willing to represent her or will have to litigate the case on her own without the assistance of counsel.[5]

## CONCLUSION

For the foregoing reasons, we grant in part defendant's motion to dismiss (doc. # 45). We dismiss the case, but without prejudice. Ms. Keys has until January 12, 2015 to move to reinstate the case, and will be allowed to do so only if she presents with her motion for reinstatement proof that she has paid to the Clerk of the Court for the Northern District of Illinois

---

[5] We note that defendant argues that Ms. Keys' case, even if refiled, would be subject to dismissal on the basis of judicial estoppel and sovereign immunity (Def.'s Mot. at 2, n.2). We do not express any view on those arguments; however, Ms. Keys may wish to consider them in deciding whether she wishes to refile her complaint.

7

the sum of $1,000.00, consisting of the $400.00 filing fee, the $65.00 charge for service of the complaint by the U.S. Marshal's Service, and a fine of $535.00.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:** December 19, 2014